# EXHIBIT "A"

5/31/2019 1:45 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 34013205
By: Miaeda Hutchinson
Filed: 5/31/2019 11:59 AM

## 2019-37459 / Court: 333
### NO. _____

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 1 of 23

| | | |
|---|---|---|
| **ERIC HUNTER,** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs* | § | |
| | § | |
| **V.** | § | |
| | § | |
| **CITY OF HOUSTON, TEXAS, STATE OF** | § | **_____ JUDICIAL DISTRICT** |
| **TEXAS, AND INDIVIDUALLY,** | § | |
| **MATTHEW SINGER, UVAL VANUNU,** | § | |
| **CARLOS BENAVIDES and G. E.** | § | |
| **REUTHER** | § | |
| *Defendants.* | § | **OF HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Plaintiff, ERIC HUNTER, and files this Original Complaint complaining of Defendants CITY OF HOUSTON, TEXAS, MATTHEW SINGER, UVAL VANUNU, CARLOS BENAVIDES and G.E. REUTHER, hereinafter collectively referred to as ("Defendants") and for causes of action, would respectfully show unto the Court and jury the following:

### I.
### DISCOVERY CONTROL PLAN LEVEL

1. Plaintiff intends to conduct discovery in this action under Level 3 pursuant to Tex. R. Civ. P. 190.2. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff seeks monetary relief in excess of $200,000.00 not to exceed $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees and judgment for all other relief to which Plaintiff is justly entitled. Plaintiff expressly reserves the right to amend this Rule 47 statement of relief if necessary.

### II.
### PRELIMINARY STATEMENT

2. The series of unfortunate events which unfolded before–and inflicted against–Eric Hunter on November 13, 2017, stemmed, solely, from the Defendants' discriminatory, malicious and

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 2 of 23

conscious-shocking conduct–exacerbated by Officer Singer's foundational incompetence (which could only be explained by inadequate training) and Sgt. Reuther's deliberate disregard to his duty to supervise and the security of Mr. Hunter's constitutional rights.

3. On November 13, 2017, Eric Hunter had his vehicle–and place of residence–unlawfully repossessed, followed by being abducted and transported across town against his will only to then to be arrested for criminally trespassing on the private property he was involuntarily transported to–while he was on the phone with a 911 dispatcher requesting–*again*–that a supervisor make the scene. To keep in step with the day Mr. Hunter was having, Officer Singer and Carlos Benavides–who kidnapped Hunter–physically assaulted the already frightened and emotionally distraught Mr. Hunter.

4. Accordingly, this action is brought by Eric Hunter against Uval Vanunu D/B/A 3B Auto Sales for malicious prosecution, breach of contract, false imprisonment and kidnapping; against Carlos Benavides for malicious prosecution, assault, false imprisonment and kidnapping; Matthew Singer for unlawful seizure/arrest, use of excessive force–in violation of the Fourth Amendment of the United States Constitution–assault and intentional infliction of emotional distress; and against City of Houston and Sergeant G.E. Reuther for failure to train/supervise, negligent hiring/retention, persistent and widespread unlawful policies, practices and customs, resulting in Plaintiff being deprived of his federally protected rights, all in violation of the Fourth and Fourteenth Amendments of the United States Constitution, and in violation of his civil rights pursuant to 42 U.S.C. § 1983.

5. The Chief of Police, is the decision-maker and policymaker for the customs, practices, policies and procedures complained of herein. The Chiefs had a duty, but failed, to implement and/or enforce policies, practices, and procedures for the Houston Police Department that respected Eric Hunter' constitutional rights. The duty to manage and train Houston Police Officers was the responsibility of the Chief of Police, Art Acevedo.

6.      Chief Art Acevedo's, and/or his delegated policymakers' failure to implement or enforce the necessary policies and/or the implementation or allowance of unconstitutional policies and practices, deprived Eric Hunter of equal protection and due process under the Fourth and Fourteenth Amendment and caused him unwarranted seizure of his person, and excruciating physical and mental anguish and his incarceration. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for his damages.

### III.
### PARTIES

7.      Plaintiff Eric Hunter, is an individual who resides in Harris County, Texas.

8.      Defendant Uval Vanunu, sued in his individual capacity, at all times material to the claims set forth herein, was the owner of 3B Auto Sales, and was acting in the normal and routine course and scope of his employment with 3B Auto Sales.

9.      Defendant Carlos Benavides, sued in his individual capacity, at all times material to the claims set forth herein, was employed by 3B Auto Sales, and was acting in the normal and routine course and scope of his employment with 3B Auto Sales.

10.     Defendant G.E. Reuther, sued in his individual capacity, at all times material to the claims set forth herein, acted under color of law, and was employed as a Sergeant by Defendant Houston Police Department. At all relevant times, Defendant Ruether had supervisory responsibilities within the Houston Police Department, and in particular, over Matthew Singer.

11.     Defendant Matthew Singer, sued in his individual capacity, at all times material to the claims set forth herein, acted under color of law, and were employed by Defendant City of Houston.

12.     Defendant City Of Houston, Texas, is a Governmental Entity and political subdivision of the State of Texas. At all times material to the claims set forth herein, Mayor Sylvester Turner (hereinafter "Mayor Turner") was the top elected official of the City of Houston and its top

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 3 of 23

3

policymaker for the City of Houston, along with members of the City Council. Mayor Turner approved the policies regarding investigation citizen complaints of police misconduct.

13.     The Houston Police Department ("HPD") is a Governmental Agency, was and is an agency, department and/or subdivision of the City of Houston organized and existing pursuant to the laws of the State of Texas, engaged in the hiring, training and supervision of law enforcement officers.

14.     One or more of the individual Defendants had supervisory responsibilities with respect to individual Defendants, and with respect to operations of the Houston Police Department.

15.     At all times material to the claims set forth herein, Police Chief Art Acevedo (hereinafter collectively referred to as "Chief" or "Chief Acevedo") was the director of the Houston Police Department and was responsible for the oversight of the Houston Police Department, the development, promulgation, and implementation of policies, procedures and standards for the Houston Police Department.  Specifically, the Chiefs were the chief policymakers for the Houston Police Department and was directly responsible for the operations of the Houston Police Department and all of its officers, including those named herein.

16.     The Houston Police Department is responsible for, among other things, development, promulgation, and implementation of policies and procedures and standards for the Houston Police Department and more specifically policies, procedures and standards relating to the use of force, arrest, internal affairs investigations, supervision, discipline and overall conduct of officers working at the Houston Police Department.

17.     The City of Houston funds and operates the Houston Police Department, which, along with the Houston City Controller's Office, is responsible for the implementation of the police department's budget, policies, procedures, practices and customs, as well as the acts and omissions, challenged by this suit.

IV.

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 4 of 23

For Official Governmental Use Only - Do Not Disseminate to the Public: 8551506 1 - Page 5 of 23

## JURISDICTION, VENUE, AND BASIS FOR RELIEF

18.    The subject matter in controversy is within the jurisdictional limit of the court. The court has jurisdiction over the claims. Jurisdiction exists under 28 U.S.C. §§ 1331 & 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983. This Court has jurisdiction over Plaintiff's other claims under principles of pendent, ancillary and supplemental jurisdiction under 28 U.S.C. § 1367.

19.    For violations of his federal constitutional rights, Plaintiff is entitled to the requested relief against all Defendants and their employees because at all relevant times herein, their conduct was subject to 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

## V.
## FACTUAL BACKGROUND

20.    On November 13, 2017, at 9:33 am, Miranda, a 3B Auto Sales employee, sent Mr. Hunter a text message allowing him until the end of the day to make his payment. Mr. Hunter then undertook a job at an apartment complex in order to make his payment before the end of the day.

21.    Unfortunately, despite this extension, at approximately 1200 hours, while on private property, Carlos Benavides, a 3B Auto Sales employee, attempted to repossess Mr. Eric Hunter's vehicle. Mr. Hunter's vehicle was parked in the parking lot apartment complex, with several individuals present. When Mr. Hunter observed Benavides attempting to repossess his vehicle, he verbally contested to the repossession and hopped in the vehicle. The 3B Auto Sales' employee became very hostile and threatening, and refused to cease the repossession, despite a large gathering of people beginning to form around the vehicle. Mr. Hunter then attempted to retrieve his personal belongings from the vehicle. Benavides then called Uval Vanunu, the owner of 3B Auto Sales, and informed him of the situation. Vanunu then instructed Benavides to repossess the vehicle even though Mr. Hunter still inside. Mr. Hunter incessantly demanded that Benavides stop the vehicle and let him out, but Benavides refused.

22.    Benavides transported Mr. Hunter across town, against his will, to the 3B Auto Sales car

5

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 6 of 23

lot.  While at the lot, Mr. Hunter pleaded with Vanunu and Benavides to retrieve his personal belongings, but they refused.  Instead, they demanded that Mr. Hunter sign a release form, allowing them to take possession of the vehicle, in exchange for allowing him to gather his personal effects. As Mr. Hunter was living out of the vehicle, almost the entirety of his personal possessions were in the vehicle.

23.     After Mr. Hunter refused to sign the release form, both, Mr. Hunter and Vanunu called 911 and requested police assistance. Although Vanunu never asked Hunter to leave the property.

24.     Officer Matthew Singer was the responding officer. Singer was wearing a body worn camera, which was active prior to arriving on the scene and captured the entire encounter between Mr. Hunter, Vanunu and Benavides. Singer first spoke with Mr. Hunter, who explained the events leading up his request for police assistance. Singer then spoke with Vanunu, who provided his version of the facts.

25.     In an approximately hour-long investigation, Singer, demonstrated he was inadequately trained, profoundly incompetent and too biased to properly handle the situation. Though Singer rightly identified the situation as a civil matter, he, nevertheless, used his police authority to interfere with, adjudicate and enforce–*without reading*–the contract between Mr. Hunter and Uval Vanunu–in favor of Vanunu.

26.     Singer forced Mr. Hunter to turnover possession of the vehicle–and with it, all of Mr. Hunter's belongings–as well as the keys to the vehicle.

27.     Recognizing Singer's incompetence and bias, Mr. Hunter requested Singer call a supervisor to the scene. Singer notified his supervisor, Sgt. Reuther, that Hunter was requesting a supervisor. Sgt. Reuther called Singer on his cell phone and asked him what was going on. Singer informed Sgt. Reuther of the situation, but Sgt. Reuther declined Hunter's request for him to make the scene–instead instructing Singer to be the determinant as to whether he should make the scene or not.

28.     Singer displayed deliberate disregard to Mr. Hunter's pleas and general disbelief or indifference to Hunter's allegations of fact–the opposite of how he treated Vanunu and Benavides's statements–despite having ample and unbiased notice that their repossession of Mr. Hunter's vehicle was unlawful.

29.     Singer called the Auto-Dealers division of the Houston Police Department, and was informed of the proper protocol that must be followed when repossessing a vehicle, which Vanunu admitted he did not follow. Namely, Vanunu admitted that he failed to obtain a repossession order, signed by a judge, because he "*didn't have time.*" Despite such, Singer concluded that Vanunu was the owner of the vehicle and had the greater right to possession–a finding completely beyond the scope of his authority.

30.     Further, Singer completely disregarded Mr. Hunter's *uncontested* allegations that he was brought to the lot against his will–an act which he did have authority to investigate and provide recourse.

31.     Singer's disregard for Mr. Hunter's claim that he was kidnapped was blatant and intentional, that Singer actually told Hunter that he did not care.

> **Singer:** "*They didn't do anything illegal.*" "Since you owe money, you don't really have a case." "It's not your car, it's never been your car."
>
> **Hunter:** "But they brought me here." "I was in the car." "They brought me here involuntarily."
>
> **Hunter:** "Didn't they tell you I was in the car?"
>
> **Singer:** "Yeah they told me you jumped in the car.
>
> **Hunter:** "No, I was in the car."
>
> **Singer:** "*__Well I don't care__* if you were in it or outside or whatever, the car is here, it's their car now."

32.     Singer's unequivocal disregard to Mr. Hunter's claim that he was kidnapped, not only demonstrates his undue bias against Mr. Hunter, but his dislike and malicious or sadistic desire to

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 7 of 23

cause him harm—which he managed to inflict both emotionally and physically.

33.     Singer's profound incompetence and outright bias continues, when, in a phone call with the Harris County District Attorney's Office, he makes several false allegations in an effort to criminalize Hunter's actions and only provides Benavides's version of the facts in an effort to decriminalize Benavides's actions of transporting Hunter against his will—requesting that charges be denied as to Hunter's request that Benavides be arrested for kidnapping him.

34.     Namely, Singer told the DA's Office that Hunter willingly jumped in the car while it was being repossessed, although Hunter told him that he was already in the car when Benavides repossessed it. Singer further added that Hunter's claim that he was kidnapped was "*nothing.*"

35.     Further, Singer told the DA's Office that he and Vanunu both asked Mr. Hunter to leave the property multiple times, which was completely false. In fact, Singer instructed Mr. Hunter to remain on the property.

36.     Neither Singer nor Vanunu told Mr. Hunter to leave the property. However, they both levied threats against Mr. Hunter. Vanunu threatened to—and did—call the police if Hunter did not sign the release form. Singer threatened Hunter by saying, "I'm going to call the DA and I'm going to tell them you're trespassing," and "Once I call the DA, *if* they take the charges I'm taking you to jail *if* you're still on the property."

37.     After receiving Singer's threat, Mr. Hunter left the property after Singer called the DA's Office and never reentered the property. Instead, Mr. Hunter, while on a public sidewalk, called 911 and requested that a supervisor make the scene.

38.     After not hearing from Singer for some time, Reuther called him on his cell phone. Singer informed Sgt. Reuther that Mr. Hunter was still on the property and that the issue had not been resolved. Again, Sgt. Reuther fails to make the scene.

39.     After Singer spoke with the DA's Office, he then spoke with Benavides and Vanunu again. Benavides and Vanunu attempted to convince Singer to arrest Hunter. Benavides told Singer that

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 8 of 23

8

Mr. Hunter threatened to have him arrested.

40.     Singer–in true irony–tells Benavides and Vanunu that Mr. Hunter "*does not think logically*."

41.     Again, giving reverence to Vanunu and Benavides's claims that Hunter was just going to come back on the property, Singer then approaches and harasses Mr. Hunter–who is still on the phone with a 911 Operator–referring to him "*Bro*" and telling him that he cannot stand on a public sidewalk. Depriving him of his right to stand on a public sidewalk.

42.     Singer then asks Hunter for his ID. Hunter reminds Singer that his ID–and other identifying information–are in his vehicle.

43.     Mr. Hunter is telling the 911 Dispatcher that he is in fear for his safety due Singer's actions and disposition and is requesting another unit make the scene. Singer hears this and then grabs Mr. Hunter, interfering or preventing him from placing an emergency phone call, requesting assistance.

44.     Singer then tells Mr. Hunter that he's being "*detained*." Hunter asks why he is being detained, and Singer replies, "you're just going to go back on the property."

45.     As Hunter is asking why he is being detained, Singer then grabs him and slams him to the ground. Singer then applies force to the back of Hunter's head, grinding it into the pavement, which caused a laceration and swelling. Singer also instructs Benavides–the person who brought Hunter to the lot against his will–to grab Hunter's hand. Benavides and Singer then continue to assault Mr. Hunter while he is on the ground–confused as to why he is being assaulted.

46.     So not only did Singer sit idly by with facts sufficient to form probable cause that Hunter was kidnapped, he instructs Hunter's alleged kidnapper to help physically subdue him–*again*.

47.     Based on Singer's belief that Mr. Hunter was going to reenter the property once he left, Singer arrested Mr. Hunter for criminal trespass. It is unclear as to when Mr. Hunter went from being detained for an impending act to being arrested without such act ever occurring.

48.     Prior to placing handcuffs on Mr. Hunter, Singer never told Mr. Hunter that he was under

9

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 9 of 23

arrest.

49.     Further, Singer charged Hunter with resisting arrest. Although, Mr. Hunter did not know he was under arrest or use force against Officer Singer or anyone else.

50.     As evidenced by Singer's body worn camera footage, at no time was Mr. Hunter asked to leave the property by Vanunu or Benavides–in Singer's presence.

51.     At no time did Singer instruct Vanunu or Benavides to tell Mr. Hunter to leave the property or that he was not welcome back on the property.

52.     At no time was Mr. Hunter issued a trespass warning.

53.     Singer seemingly acknowledged that Mr. Hunter was brought to the property against his will by Benavides, thus did not enter the property unlawfully. Yet, without once hearing Vanunu or Benavides ask Mr. Hunter to leave the property, concluded that Mr. Hunter was trespassing.

54.     It was only after Singer radioed for assistance, alleging that Hunter was resisting that Sgt. Reuther made the scene.

55.     Sgt. Reuther, after reviewing Singer's offense report and body worn camera footage of the incident, determined that Singer's use of force was justified. Sgt. Reuther spoke with Benavides and took his statement, but failed to speak with Mr. Hunter–who asked for him to make the scene long before things escalated–and take his statement.

56.     Sgt. Reuther's conclusion was based solely on the statements made by Singer and Benavides.

57.     In addition to being investigated by Sgt. Reuther, this incident was investigated by HPD's Internal Affairs Division (IAD Record #52262-2017), and–*again*–Singer's use of force was found to be justified.

58.     In fact, of all the egregious conduct that took place, the only action the City of Houston found objectionable–or worthy of discipline–was Singer's failure to deactivate his body worn camera when he called the DA's Office.

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 10 of 23

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 11 of 23

## VI.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983 VIOLATIONS

59.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

60.    *Section 1983.* The Civil Rights Act of 1871 (Ku Klux Klan Act), now codified as 42 U.S.C. § 1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

61.    The state action requirement for standing under 42 U.S.C. § 1983 has more commonly been referred to as "color of state law," from the statute itself. Plaintiff are informed and believes, and thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

62.    42 U.S.C. § 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, Plaintiff alleges that Defendants, jointly and/or severally deprived them of their Fourth Amendment rights and those rights, privileges, and immunities secured by the Fourth and Fifth Amendments to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated this provision by the following actions, *inter alia*, and/or omissions:

     a) by Singer when using excessive force in the course of detaining Mr. Hunter, in violation of the Fourth Amendment and its "reasonableness" standard. Mr. Hunter therefore pleads

that he was unlawfully body slammed and had his –despite his disability. Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable;

b) by Singer when preventing Mr. Hunter from legally standing on a public sidewalk–a violation of his right to remain free from unreasonable seizure;

c) by Singer when interfering with, or preventing, him from making an emergency phone call; and

d) by Sgt. Reuther for failing to supervise Singer and intervene, despite having the opportunity to do so, when he was aware that Mr. Hunter requested his presence as Singer was having difficulty handling the scene, which have prevented the violations and/or injuries of Mr. Hunter.

63.     The Fourth Amendment guarantees security from unreasonable search and seizure. It includes the expectation of privacy, the right to be free from arrests without probable cause to believe the arrested person committed a crime. Accordingly, Plaintiff allege that they were subjected to an unreasonable search and seizure, had their expectation of privacy violated, were detained without reasonable suspicion and/or probable cause, and Mr. Hunter was subjected to physical abuse and unreasonable excessive force.

64.     *§ 1983 - Excessive Force*. Mr. Hunter pleads that Defendants used excessive force in the course of Singer's supposed arrest, and/or investigatory stop, and/or other "seizure" of a free citizen, such as Mr. Hunter in violation of the Fourth Amendment and its "reasonableness" standard. Mr. Hunter therefore pleads that he was unlawfully assaulted, and physically beaten by Defendants Singer and Benavides. Singer authorized Benavides to use force against Plaintiff. Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable.

65.     Such actions and/or omissions are "objectively unreasonable" in light of the facts and circumstances confronting him without regard to his underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case demonstrates the unreasonableness of said actions. For these reasons, it is objectively unreasonable for Officer

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 12 of 23

Singer to physically assault a frightened Mr. Hunter on a public sidewalk while he was attempting place an emergency phone call. In addition to being unreasonable and tortious, Singer's use of force violated *Texas Penal Code 42.062*–Interference with an Emergency Call.

66.      *§ 1983 - Search & Seizure.* Furthermore, when a person, such as Plaintiff is seized and is not a "suspect" and had committed no crime, but was forced to undergo police brutality and escalation of the situation. The importance of the governmental interests alleged to justify the intrusion are non-existent. As such, the actions and/or omissions of said officers cannot be justified under the circumstances of the instant case.

67.      Likewise, Defendants are liable if they conduct the search or seizure in an abusive manner even if they have the lawful authority to conduct the search and seizure. Plaintiff in this situation is protected by the Fourth Amendment to the United States Constitution and Article I, Sec. 9 of the Texas Constitution. The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search comprises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. In this instance, the search and seizure of Plaintiff ran afoul of the Fourth Amendment because the search and seizure was conducted in an unnecessarily cruel, painful, and/or dangerous manner. Indeed, Mr. Hunter was physically assaulted by Defendants–causing harm–on a public sidewalk without a warrant and/or justification.

68.      Defendants violated Plaintiff Eric Hunter's right to be protected from unreasonable search and seizures under the Fourth Amendment to the United States Constitution when he threatened to arrest Hunter without probable cause, told Hunter that he could not stand on the sidewalk and subsequently assaulted and arrested him, although he was legally standing on public property.

69.      Singer's actions were manifestly indefensible, plainly incompetent and in violation of clearly established law.

70.      *§1983 - False Arrest and/or False Imprisonment.* Plaintiff Eric Hunter further alleges

13

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 13 of 23

Defendant Singer violated his Fourth Amendment rights when he was unreasonably, falsely arrested and detained.

71.     Plaintiff plead a § 1983 claim for false arrest under the Fourth Amendment as Defendants arrested them without probable cause. Singer did not have probable cause to arrest them because the facts and circumstances within their knowledge was not reasonably sufficient to warrant a prudent officer to believe that he had committed or was committing an offense. On an objective basis, it is obvious that no reasonably competent officer would have concluded that Mr. Hunter was trespassing or resisting arrest.

72.     There was no physical action taken by Plaintiff that he intentionally prevented or obstructed Officer Singer from effecting an arrest, search or transport. In fact, the evidence shows that Mr. Hunter was not aware that he was under arrest or being searched or transported.

73.     It is well-established that warrantless arrests must be supported by probable cause.

74.     The Defendants' conduct not only violated Plaintiff's Fourth Amendment Rights to remain free from unreasonable seizure without due process of law, but Singer's actions also violated Texas Penal Code 39.03 – Official Oppression. Further showing that Defendants violated clearly established law.

75.     Alternatively, Defendants were deliberately indifferent to the federally protected rights of Plaintiff. In either event, it is clear that their actions were either plainly incompetent, reckless or knowingly in violation of clearly established law.

76.     *§ 1983 - Malicious Prosecution.* Plaintiff Eric Hunter also pleads a cause of action for malicious prosecution under § 1983. Defendants, acting under color of state authority, maliciously charged Plaintiff with two misdemeanors and tendered false information concerning said charge to the prosecutor which lead ADA Clark to believe that probable cause existed when there was none. Additionally, Plaintiff can demonstrate that the prosecution that is central to his civil lawsuit was terminated in their favor. Defendants not only caused the prosecution to be brought, but were

14

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 14 of 23

prepared to testify, and submitted information in such regard, in aid of such prosecution. Said prosecution terminated in favor of Plaintiff. Defendants acted without probable cause and with malice and caused Plaintiff to expend funds in hiring an attorney and further caused them to suffer mental anguish damages.

77.     *§ 1983 – First Amendment Retaliation.* Plaintiff further pleads that Defendants' use of excessive force, search, seizure and/or arrest of Plaintiff was in response to Plaintiff's' exercise of their constitutional right of free speech.

78.     *§ 1983 - Municipal Liability.* It is also well-established that municipalities are liable under 42 U.S.C. § 1983 for constitutional torts that are in compliance with the municipality's customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels. In this case, City of Houston is liable because it sanctioned the custom, practice and/or policy or procedure of illegal searches, illegal seizures, excessive force and/or violating their citizens' right to be free of unwanted search and seizure. Defendants' actions were a customary practice and/or policy or procedure that was sanctioned by the City of Houston out of which deprived Plaintiff of his civil rights by statute and by both the Texas and United States Constitutions. Liability for the City of Houston is established under §1983 because the assault and man-handling of citizens, with little or no justification, is a persistent, widespread practice of city employees -- namely officers -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy. City of Houston has actual or constructive knowledge of this practice, custom, and/or policy or procedure and sufficiently numerous prior incidents of police officers beating citizens establishes custom and accession to that custom by the City's policy makers. City of Houston's unspoken policy of falsely arresting and assaulting citizens is a decision that reflects deliberate indifference to the risk that a violation of particular constitutional or

For Official Governmental Use Only - Do Not Disseminate to the Public: 8551506l - Page 15 of 23

15

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 16 of 23

statutory rights will follow the decision. In the alternative, City of Houston is liable under § 1983 for failure to adopt a policy precluding officers from beating citizens because such failure to adopt such a policy is one of intentional choice.

79.     Moreover, City of Houston is liable for inadequate training of police officers under §1983. Liability attaches to City of Houston because the City's failure to train amounts to deliberate indifference to the rights of the persons with whom the police come in contact. In particular, Plaintiff alleges that the training program in relation to the tasks a particular officer must perform is inadequate in the respect that the program fails to teach new police persons that unlawfully assaulting and arresting citizens violates citizens' their constitutional rights. As such, the deficiency in training actually caused Defendants to violate Plaintiff' constitutional rights.

80.     Plaintiff alleges that Officer Singer was inadequately trained on police procedure and the Texas Penal Code, particularly as it relates to establishing probable cause, resisting arrest and criminal trespass.

81.     Defendant City of Houston had the opportunity to review the unlawful conduct of Defendants, and upon review, determined that the Defendants acted in conformance to its official policies or otherwise ratified their conduct. Namely, the facts–even as alleged by Singer–do not support the litany of the verifiably false statements contained in his report or his arrests for criminal trespass or resisting arrest. Thus, Defendants' conduct was manifestly indefensible.

82.     Furthermore, as the decision to falsely arrest Plaintiff was made by multiple employees within the City of Houston and/or was acquiesced to by other officers and supervisors, this case demonstrates that the City of Houston has a policy, practice, procedure or subculture which, not only allows, but fosters unconstitutional conduct, such as disregarding wholly, or manufacturing probable cause to incarcerate persons arbitrarily deemed deserving of incarceration.

83.     Furthermore, as multiple City of Houston deputies were involved these patently unconstitutional arrests, this case presents a self-contained study that City of Houston's employees

16

are inadequately trained and supervised, or alternatively, that City of Houston's employees are so empowered by a pervasive and pandemic subculture of unlawful conduct, that the probable cause requirement for warrantless arrests is only optional. All of which was exacerbated by City of Houston's ratification of Defendants' unlawful conduct.

84.     Violations of this nature can only occur as a result of institutional failures. Said failures show City's widespread practice of disregarding the rights of its citizens, and a failure to adequately train its employees on an institutional level.

85.     *§ 1983 - Qualified Good Faith Immunity Not Available.* Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the officer engaged in the conduct in good faith there is no liability for that individual. The standard by which an officer's entitlement to good faith qualified immunity is objective not subjective. Defendants' actions judged by such objective standard protects, "all but the plainly incompetent or those who knowingly violate the law." The determination of objective reasonableness must be based on a version of the facts most favorable to Plaintiff. To the extent that credibility questions exist, a fact-finder continues to be necessary. In the instant case, Plaintiff allege that Defendants are not entitled to claim "qualified good faith immunity." Importantly, Defendants never had a good faith belief in their conduct because they acted in a manner demonstrating that they were plainly incompetent and knowingly violated Plaintiff' civil rights.

86.     When the facts are taken in the light most favorable to the Plaintiff, it is clear that Plaintiff was merely checking on the condition of their relative when they was assaulted, harassed and/or arrested. Any reason given by Defendants for their unlawful actions and/or omissions does not warrant the application of qualified good faith immunity because they were never in danger nor were any other persons in the vicinity in danger of Plaintiff. Plaintiff have asserted a violation of their constitutional right to be free from unreasonable search and seizure and their right to privacy; this right was clearly established at the time of Defendants' actions. Moreover, Defendants' actions

17

For Official Governmental Use Only - Do Not Disseminate to the Public: 8551506I - Page 17 of 23

were objectively unreasonable in the sense that they knew or reasonably should have known that the actions taken within their authority or responsibility would violate Plaintiff' constitutional rights.

### SECOND CLAIM FOR RELIEF - - Texas - - False Arrest and False Imprisonment

87.     Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

88.     As a pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law, willfully detained Plaintiff without their consent and without authority of law. Plaintiff plead false imprisonment as Defendants had the intent to confine them, and carried out the intent by putting them in a position so that he could not move, let alone leave. Plaintiff were conscious during the confinement and said confinement resulted in harmful detention, without consent, and without authority of law.

### THIRD CLAIM FOR RELIEF - - Texas - - Intentional Infliction of Emotional Duress

89.     Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

90.     As a pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law, intentionally and/or recklessly inflicted emotional duress upon Plaintiff, thereby they claim the tort of intentional infliction of emotional distress. Plaintiff allege that the individual Defendants, acted intentionally and/or recklessly when beating him and further alleges that such conduct was extreme and outrageous. The actions of the individual Defendants caused Plaintiff to suffer emotional distress; and the emotional distress suffered by them was so severe that it required treatment -- no reasonable person should be expected to endure such.

### FOURTH CLAIM FOR RELIEF - - Texas - - Assault & Battery

91.     Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 18 of 23

herein.

92.    As a pendent state cause of action, at all times material and relevant herein, the individual

Defendants, by acts and/or omissions and under color of state law did then and there by acts and/or

omissions, intentionally, knowingly and/or recklessly caused severe personal injury to Mr. Hunter

through uncontested physical contact with him.

93.    Under Texas law, the cause of action for excessive force is simply one for assault and

battery. Consequently, Mr. Hunter alleges that Defendant Singer committed an assault upon him

when they intentionally, knowingly, and/or recklessly forcibly grabbed him and proceeded to use

unnecessary and excessive force upon him. At no time did Mr. Hunter consent. Said assaultive

conduct of the individual Defendants was committed intentionally, knowingly, and/or recklessly

and was the proximate cause of bodily and emotional injuries to Mr. Hunter. Said injuries were

the direct and immediate consequence of the individual Defendants' wrongful act and a natural

and direct result of the assault.

94.    At no time was Defendant Singer privileged to take such action, as force was not necessary.

Moreover, Singer's assault and battery of Mr. Hunter was not objectively reasonable when

balancing the amount of force used against the need for the force. Put differently, at no time was

Mr. Hunter combative, resisting, fleeing or about to flee, nor was anyone (including Defendants)

ever in danger.

### *FIFTH CLAIM FOR RELIEF - - Texas - - Malicious Prosecution*

95.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth

herein.

96.    As a state cause of action, at all times material and relevant herein, Defendants Singer,

Vanunu and Benavides, by acts and/or omissions and under color of state law, instituted criminal

proceedings against Plaintiff with malice and under color of state law. Hence, Plaintiff also plead

a cause of action for malicious prosecution under state law of Texas and said claim is set forth

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 19 of 23

above.

### SIXTH CLAIM FOR RELIEF - - Texas - - Breach of Contract

97.     Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

98.     Plaintiff would show that Plaintiff and Defendants Uval Vanunu and 3B Auto Sales entered into a written, valid, enforceable and binding agreement.   Plaintiff has fully performed all of its obligations under the Agreement and Defendants have enjoyed in the benefit of such performance, including accepting Plaintiff's late payments. However, Defendants breached their agreement with Plaintiff.

99.     Defendant Uval Vanunu and 3B Auto Sales breached the contract in the following ways:

      a.  Failing to honor its agreement to extend the deadline and accept Plaintiff's late payment; and

      b.  Unlawfully repossessing Plaintiff's vehicle.

100.    Each of these acts and omissions, singularly or in combination with others, constitutes a breach of contract.   Thus, Plaintiff sues for the resulting damages, including any loss of profit, interest accrual or monies to be paid to third parties.

### SEVENTH CLAIM FOR RELIEF - - Federal & State - - Wrongful Repossession

101.    Plaintiff re-alleges all of the allegations in the previous paragraphs, as though fully set forth herein.

102.    Defendants 3B Auto Sales, Uval Vanunu and Carlos Benavides wrongfully repossessed Plaintiff's vehicle, both because he was not in default of his loan agreement, to the extent it complied with Texas law and because they breached the peace in conducting the repossession when they created a disturbance, kidnapped Plaintiff and threatened him with physical harm and incarceration.

103.    Accordingly, Plaintiff would show that 3B Auto Sales Defendants repossessed his vehicle

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 20 of 23

in violation of Texas Business & Commerce Code § 2A.525(c), Federal Debt Collection Act and the Texas Deceptive Trade Practices Act when it repossessed his vehicle over verbal protest–and with Plaintiff inside of the vehicle.

104.     Thus, Plaintiff sues for the resulting damages, including any loss of profit, interest accrual or monies to be paid to third parties, statutory damages and attorney's fees.

## VII.
## DAMAGES

105.     Plaintiff re-alleges all of the allegations in the previous paragraphs, as through fully set forth herein.

106.     Mr. Hunter has suffered physical pain and suffering, anxiety, fear, humiliation, embarrassment, loss of physical liberty, mental anguish and severe emotional distress that he, on information and belief, will continue to suffer in the future.

107.     Defendants' conduct was more than mere momentary thoughtlessness, inadvertence, or error of judgment.   Rather, the acts and omissions of Defendants complained of herein were committed with malice, recklessness and/or deliberate disregard to the federally protected rights of Mr. Giles.  In order to punish Defendants for knowingly, intentionally and recklessly engaging in unlawful practices, and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery of exemplary damages from Defendants. *Smith v. Wade, 461 U.S. 30 (1983).*

## VIII.
## ATTORNEY FEES

108.     Upon prevailing in this matter, Plaintiff is entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988 or any other applicable law necessity of authenticating the document(s).

## IX.
## REQUEST FOR DISCLOSURE

109.     Under Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

21

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 21 of 23

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 22 of 23

## X.
## RULE 193.7 NOTICE

110.    Plaintiff hereby gives actual notice to Defendants that any and all documents produced may be used against Defendants at any pre-trial proceeding and/or trial of this matter without the necessity of authenticating the document(s).

## XI.
## JURY DEMAND

111.    Plaintiff hereby demands a trial by jury.

## XII.
## PRAYER

WHEREFORE PREMISES CONSIDERED, upon final hearing, Plaintiff prays for a judgment rendered for Plaintiff and against Defendants, and that this Court award:

    a.    compensatory, general, nominal and actual damages, jointly and severally, where appropriate against each defendant;

    b.    punitive damages against each defendant, individually, where appropriate;

    c.    reasonable attorney fees and costs against all defendants for violations of federal constitutional rights under 42 U.S.C. §§ 1983 & 1988;

    d.    pre-judgment and post-judgment interest; and

    e.    such other and further relief as this Court may deem appropriate, including (without limitation) declaratory and/or injunctive relief as the Court may deem appropriate under 42 U.S.C. § 1983 to prevent future unconstitutional conduct.

Respectfully submitted,

**ANDRE EVANS & ASSOCIATES, PLLC**

*/s/ Andre D. Evans*
ANDRE D. EVANS
Federal Bar I.D. No. 2553080
Texas State Bar No. 24082970
3003 South Loop West, Suite 108

Houston, Texas 77054
T: (832) 941-1282
F: (832) 778-8353
andre@attorneyandreevans.com

**ATTORNEY FOR PLAINTIFF**

For Official Governmental Use Only - Do Not Disseminate to the Public: 85515061 - Page 23 of 23



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   July 1, 2019

Certified Document Number:        85515061 Total Pages:  23

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

7/5/2019 1:23 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 34909786
By: MARCELLA WILES
Filed: 7/5/2019 1:23 PM

**No. 2019-37459**

| | | |
|---|---|---|
| **ERIC HUNTER,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **OF HARRIS COUNTY, TEXAS** |
| | § | |
| **CITY OF HOUSTON, TEXAS, STATE OF** | § | |
| **TEXAS, AND INDIVIDUALLY,** | § | |
| **MATTHEW SINGER, UVAL VANUNU,** | § | |
| **CARLOS BENAVIDES, and G.E.** | § | |
| **REUTHER** | § | |
| | § | |
| **Defendant.** | § | **333ᴿᴰ JUDICIAL DISTRICT** |

**DEFENDANT MATTHEW SINGER'S**
**ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant MATTHEW SINGER ("Defendant") files this his, Original Answer and Affirmative Defenses to Plaintiff's Original Complaint, Jury Demand, and would respectfully show as follows:

**A.     GENERAL DENIAL**

1.     Defendant generally denies each and every allegation set forth in Plaintiff's Original Complaint and demands strict proof of same.

**B.     AFFIRMATIVE DEFENSES**

2.     Plaintiff has failed to state a claim for which relief may be granted.  Specifically, Defendant denies that he violated 42 U.S.C. § 1983, and any State law in connection with the incident which forms the basis of this lawsuit.

3.     Defendant specifically and affirmatively pleads and claims all of the exemptions and exceptions from, and limitations on, liability provided by the Texas Tort Claims Act, § 101.001 et seq., Civil Practices and Remedies Code.

4.      Defendant specifically and affirmatively pleads and claims all the exemptions and exceptions from, and limitations on, suit and liability provided under the doctrines of official immunity and qualified immunity.

5.      Defendant affirmatively pleads his entitlement to official immunity.  At all relevant times, Defendant's actions involved the performance of his discretionary authority, which acts were within the scope of his authority as an employee or officer of the City of Houston, and the Defendant acted in objective "good faith" as that term is defined by Texas official immunity jurisprudence.

6.      Defendant affirmatively pleads his entitlement to qualified immunity.   At all relevant times, he was a public or governmental official, employed by the City of Houston; Defendant acted without malice and without an intent to deprive Plaintiff of any legally protected right.  Defendant had an objectively reasonable, good faith belief that his actions were lawful, proper and within and pursuant to the scope of his discretionary authority, and Defendant's actions were objectively reasonable.  Defendant further plead that he was not plainly incompetent and did not violate clearly established law of which a reasonable police officer would have known.

7.      Defendant states that reasonable suspicion existed that Plaintiff had committed a criminal offense, justifying his detention.

8.      Defendant states that the detention of Plaintiff was conducted lawfully, without any intent to injure Plaintiff, was objectively reasonable and did not violate clearly established law of which a reasonable person would have known.

9.      Defendant states that at all relevant times, he used only the amount of force that was objectively reasonable and did not violate clearly established law of which a reasonable person would have known.

2

10.     Defendant states that all force used by him on the date of the incident in question was reasonable, necessary and justified based on the totality of circumstances.

11.     Defendant states that Plaintiff's own actions and/or negligence were the sole cause or alternatively, the proximate cause of the occurrence or incident in question and of any alleged resulting damages.

12.     Defendant states that Plaintiff's contributory negligence and/or actions were the cause of the injuries of which he now complains.

13.     Defendant specifically and affirmatively pleads that Plaintiff failed to mitigate his damages.

### C.     JURY DEMAND

14.     Defendant demands a trial by jury in this cause.

### D.     RESERVATION OF RIGHTS AND PRAYER

15.  Defendant reserves the right to amend or supplement this Answer at a later date.

WHEREFORE, PREMISES CONSIDERED, Defendant MATTHEW SINGER prays that Plaintiff take nothing by his suit, that MATTHEW SINGER recover his costs and all other relief that he may be justly entitled to at law or in equity.

Respectfully submitted,

RONALD C. LEWIS
City Attorney

DONALD J. FLEMING
Section Chief, Labor, Employment, & Civil Rights

Date:   July 5, 2019                    By:     */s/ James C. Butt*_____
                                                JAMES C. BUTT
                                                Senior Assistant City Attorney

                                                SBN: 24040354

3

Phone: (832) 393-6320 (direct)
Jim.Butt@houstontx.gov
ATTORNEY IN CHARGE

 /s/  Deidra Norris Sullivan
DEIDRA NORRIS SULLIVAN
Senior Assistant City Attorney
SBN: 24080648
Tel. (832) 393-6299 (direct)
Deidra.Sullivan@houstontx.gov

## CERTIFICATE OF SERVICE

I certify that, pursuant to Texas Rules of Civil Procedure, a true copy of the instrument to which this certificate is attached was served via electronic service, and the electronic transmission was reported as complete on the following party:

Andre Evans
ANDRE EVANS & ASSOCIATES, PLLC
3003 South Loop West, Suite 108
Houston, Texas  77054
andre@attorneyandreevans.com

ATTORNEY FOR PLAINTIFF

 /s/  Deidra Norris Sullivan
DEIDRA NORRIS SULLIVAN

4

7/8/2019 11:56 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 34936574
By: MARCELLA WILES
Filed: 7/8/2019 11:56 AM

CAUSE NO. 2019-37459

| | | |
|---|---|---|
| ERIC HUNTER, | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| vs. | § | 333rd JUDICIAL DISTRICT |
| | § | |
| CITY OF HOUSTON, TEXAS, STATE OF | § | |
| TEXAS, AND INDIVIDUALLY, | § | |
| MATTHEW SINGER, UVAL VANUNU, | § | |
| CARLOS BENAVIDES, AND G. E. | § | |
| REUTHER | § | OF HARRIS COUNTY, TEXAS |
|     Defendants. | § | |

**DEFENDANT UVAL VANUNU'S ORIGINAL ANSWER WITH**
**VERIFIED DENIAL AND REQUEST FOR DISCLOSURE**

Defendant Uval Vanunu answers Plaintiff's petition, makes a verified denial, and

requests disclosures:

## I.  GENERAL DENIAL

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Vanunu generally

denies each and every, all and singular, the allegations contained in Plaintiffs' petition. Vanunu

demands strict proof, by a preponderance of the evidence and/or by clear and convincing

evidence, as required by the laws and constitutions of the State of Texas and of the United States.

## II.  VERIFIED DENIAL

2.      Vanunu denies that he is liable in his alleged capacity as a partner in a business

with an assumed name of 3B Auto Sales.

3.      The business known as 3B Auto Sales is a Texas limited liability company named

3B Auto Sales, LLC.

4.      The business sold Plaintiff a vehicle and repossessed the vehicle was 3B Auto

Sales, LLC.

### III.    REQUESTS FOR DISCLOSURE

5.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Vanunu requires the Plaintiff to disclose, within 30 days of service of this request, the information or materials described in Rule 194.2(a)-(l).

### PRAYER

For these reasons, Defendant Uval Vanunu prays that Plaintiff takes nothing from him by reason of this action; that Vanunu be awarded its attorney's fees and costs of court; and that Vanunu be awarded such other and further relief, at law or in equity, to which he may show itself justly entitled.

Respectfully submitted,

**JOHNSON DELUCA KURISKY & GOULD**
**A PROFESSIONAL CORPORATION**

By: _____
    Donald W. Gould, II
    Texas State Bar No. 08234250
    dgould@jdkglaw.com
    Charles Patrick Waites
    Texas State Bar No. 00791867
    pwaites@jdkglaw.com
    4 Houston Center
    1221 Lamar, Suite 1000
    Houston, Texas 77010
    (713) 652-2525 - Telephone
    (713) 652-5130 - Telecopier

**ATTORNEYS FOR UVAL VANUNU**

2

## **VERIFICATION**

THE STATE OF TEXAS                 §
                                                    §

COUNTY OF TEXAS               §

       BEFORE ME, the undersigned authority, on this day personally appeared Uval Vanunu, who under oath stated that the factual statements made in paragraphs 2, 3, and 4 of the foregoing instrument are within his personal knowledge and are true correct.



Uval Vanunu

SUBSCRIBED AND SWORN TO BEFORE ME on this the 5th day of July, 2019.

Notary Public, State of Texas

### **CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing pleading has been delivered to all counsel of record on this, the __8th__ day of July, 2019, as follows:

*Via Electronic Service:*
Andre D. Evans
ANDRE EVANS & ASSOCIATES, PLLC
3003 South Loop West, Suite 108
Houston, Texas 77054
andre@attorneyandreevans.com

*Attorney for Plaintiff*

Charles Patrick Waites

3