United States District Court
Southern District of Texas
**ENTERED**
September 29, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ERIC HUNTER,<br>Plaintiff, | §<br>§<br>§<br>§ | CIVIL ACTION NO.<br>4:19-cv-02521 |
| vs. | §<br>§<br>§ | JUDGE CHARLES ESKRIDGE |
| CITY OF HOUSTON, *et al*,<br>Defendants. | §<br>§<br>§ | |

**OPINION AND ORDER
GRANTING MOTIONS FOR SUMMARY JUDGMENT**

The motions for summary judgment filed by Defendants City of Houston, Officer Matthew Singer, and Sergeant G.E. Reuther are granted. Dkts 53, 55, 57.

Defendant 3B Auto Sales, LLC is dismissed from this lawsuit for failure of service.

1. Background

This dispute arises from the repossession of a car belonging to Plaintiff Eric Hunter. He brings claims for violation of his civil rights against the City of Houston along with Officer Singer and Sergeant Reuther, both of whom are members of the Houston Police Department. He also brings claims under state law against 3B related to the repossession. Defendant Uval Vanunu is the owner of 3B and was previously dismissed from this lawsuit when Hunter failed to timely respond to his motion for summary judgment. Dkt 96.

The conduct at issue began with the repossession of Hunter's car by Carlos Benavides, a 3B employee. Hunter saw Benavides enter his car, so he got into the passenger seat and asked why his car was being repossessed. Benavides explained that Hunter had failed to make the required payments on his car loan. Hunter asked Benavides if he could drive him to his house so that he could pay the amount due. Benavides explained that he was

required to drive straight to the 3B dealership but could drive Hunter home after that, if needed. Benavides thus towed Hunter's car to the dealership with Hunter in the passenger seat of the tow truck. Dkt 53-1 at 25 (Benavides affidavit).

Hunter asked if he could retrieve his personal belongings, which included his identification and other personal documents. Vanunu told Hunter that he would give him his belongings if Hunter signed a release form indicating his consent to the repossession. Dkt 53-1 at 23 (Vanunu affidavit). Hunter declined. Id at 23, 25. Vanunu and Benavides attest that Vanunu told Hunter to leave several times after he declined to sign the consent form. Ibid. Hunter purports to dispute this, but his affidavit is stricken as part of the rulings below. See Dkt 68-1 at 8. Regardless, at some point thereafter, Vanunu called the police and reported Hunter as trespassing. Dkt 53-1 at 25.

Officer Singer responded to the call and wore a body camera. That video was submitted with the motions for summary judgment. See Dkt 53-1 (Exhibit C).

Singer spoke to Hunter, who was standing inside the shop. He then spoke with Vanunu and Benavides. Bodycam, 0:02:52–0:04:27. Vanunu told Singer that this was Hunter's second repossession, and that he had asked him to leave. Id at 0:05:04–0:05:12. Benavides also stated that he had asked Hunter to leave several times. Id at 0:07:15–0:08:25. Singer then talked to Hunter again about the fact of repossession, which Hunter protested. Singer stated, "This is all civil stuff. It's got nothing to do with me. The only thing I'm here for is you being on the property, and they don't want you on the property." Id at 0:09:30–0:09:38.

Hunter requested that a supervisor be called to the scene. Id at 0:10:28–0:10:43. Singer agreed to make such a call, while twice telling Hunter explicitly, "You are trespassing on the property." Id at 0:10:43–0:10:48. Singer then called his supervisor, Sergeant Reuther. Reuther suggested Singer call the Houston Police Department's Auto Dealers Division to ensure that the repossession had been properly conducted. Id at 0:12:07–0:13:57. Singer explained that Hunter wasn't listening to him, and that he would try to resolve the situation without an arrest. Id at 0:12:18–0:13:40. Reuther advised that he didn't

2

believe it was necessary at that time to personally respond to the scene. Dkt 77-1 at 12. Singer then called HPD-AD, who spoke with Hunter and Vanunu at length. Bodycam, 0:15:39–0:40:38.

Hunter then asked Singer what would stop him "from getting in my car and leaving with it?" Id at 0:41:18–0:41:23. Singer responded that such action would constitute theft because the car belongs to 3B. Id at 0:41:24–0:41:28. Hunter then stated that 3B "basically" kidnapped him, and that he wanted to file kidnapping charges. Singer said he would call the Harris County District Attorney's Office to see if they would take the charges. Id at 0:41:47–0:42:20.

At about this time, Reuther called Singer for an update. Singer explained that Hunter wasn't cooperating. Reuther advised Singer to contact the DA's Office before arresting him. Id at 0:44:06–0:45:17; Dkt 55-1 at 12. Singer then informed Hunter that he would call the DA's Office to provide both sides of the story, including that Hunter was trespassing. Before Stringer could make the call, Hunter asked him several questions, which included if he was going to be arrested. Singer explained that he would be arrested if he was still on the property when he called the DA's Office. Hunter went and stood just outside the entrance gate. Bodycam, 0:46:08–0:46:50.

Singer then called the DA's Office and explained the circumstances, recommended that he arrest Hunter for trespass, and relayed Hunter's kidnapping allegations. The bodycam video didn't record audio of the response, but the criminal trespass charges were apparently accepted by the DA's Office. See Dkt 53-1 at 12 (Reuther report); Bodycam, 0:47:31–0:52:07.

Singer then approached Hunter, who by then had apparently called 911, complaining of Singer's conduct and asking that another officer come to the scene. Singer directed Hunter to come toward him, but Hunter refused and stated that he was on the phone with the police. Singer attempted to arrest Hunter, telling him to put his hands behind his back. Hunter resisted, grabbing hold of the entrance gate to prevent Singer from placing handcuffs on him. Singer frisked him and, at a moment when Hunter removed his hand from the fence, took him to the ground, where Hunter continued to resist. Singer asked

3

Benavides for help gaining control over Hunter, and the two eventually placed Hunter in handcuffs. Id at 0:56:48–1:00:26.

Singer then called for a supervisor on the scene regarding use of force. Id at 1:00:29. Reuther then arrived on the scene, generally interviewed Singer and Benavides, and approved Stringer's actions. Id at 1:17:26–1:24:07.

In August 2019, the DA's Office dropped the criminal trespass charges, explaining that it believed probable caused existed but couldn't be proven beyond a reasonable doubt. Dkt 57-1 at 97 (state court motion to dismiss).

In February 2018, the HPD Internal Affairs Division investigated an administrative complaint by Hunter in which he alleged that Singer used excessive force. Dkt 53-1 at 28–32 (investigation summary). The investigation included a review of Singer's administrative statement and body-cam footage; Singer's response to resistance form; Reuther's response to resistance supervisor supplement, offense report, and after-action report; and affidavits by Vanunu and Benavides. The investigation report recommended Singer's exoneration. Id at 32.

Hunter brought this lawsuit in May 2019 in Texas state court. Dkt 1-1 at 2–24. Defendants removed, asserting federal question jurisdiction. Dkt 1. The operative pleading is Hunter's second amended complaint. Dkt 18. He subsequently voluntarily dismissed several claims as to the City of Houston, Singer, and Reuther. Dkt 48. Those remaining include claims under state law against 3B; a Section 1983 claim against the City of Houston for municipal liability; and Section 1983 claims against Singer and Reuther for individual liability.

The City, Singer, and Reuther now seek summary judgment. Dkts 53, 55, 57. Hunter also affirmatively moved for summary judgment on his claims. Dkt 62. But that motion was denied for reasons stated on the record at hearing pertaining to his failure to compile and present his supporting evidence in discernible form. See Minute Entry of 04/16/2021.

    2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes

4

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2010), quoting *Anderson*, 477 US at 248. Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008), citing *Ballard v Burton*, 444 F3d 391, 396 (5th Cir 2006).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015) (quotation omitted); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986) (citations omitted). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536 (quotation omitted). To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012) (citation omitted).

      3. Summary judgment evidence

A preliminary issue pertains to evidence that Hunter submitted to defend against these motions.

Singer moves to strike all but three of the exhibits that Hunter offered in his response. Dkt 73 at 2–9, citing Dkt 68-1

at 6–14 (Exhibit A), 22–114 (Exhibits D through H), 123–27 (Exhibits J and K), Dkts 68-2 to 68-16 (Exhibits L through UU). The only exhibits not moved on are Exhibits B (Vanunu affidavit), C (Benavides affidavit), and I (Singer and Reuther IAD affidavits). Of note, Hunter filed these same exhibits in response to the City's motions, although there is some variance in order and form. See Dkt 77-1 at 1–3 (exhibit list in response to the City's motion). He also filed a much smaller subset of the exhibits in response to Reuther's motion, but all of those filed are within the objections asserted by Singer. See Dkts 79-1 to 79-4.

Hunter didn't respond to the objections. Local Rule 7.4 in part provides, "Failure to respond to a motion will be taken as a representation of no opposition." As such, the objections will be sustained, and the exhibits will be stricken on that basis. This includes Hunter's own affidavit. See Dkt 68-1 at 7–14 (Exhibit A). And this means that the analysis will be guided by evidence consisting of Singer's bodycam video, affidavits from Benavides, Vanunu, Singer, and Reuther, and any pertinent exhibits offered by Defendants.

4. Claims against Officer Singer and Sergeant Reuther

Hunter brings several claims against Singer and Reuther, all pursuant to Section 1983 and based on constitutional violations. Singer and Reuther assert a defense of qualified immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231 (2009), quoting *Harlow v Fitzgerald,* 457 US 800, 818 (1982). The availability of qualified immunity ultimately "turns only upon the *objective* reasonableness of the defendant's acts." *Thompson v Upshur County*, 245 F3d 447, 457 (5th Cir 2001) (quotations omitted) (emphasis in original).

On summary judgment, analysis of qualified immunity proceeds on two prongs. See *Aguirre v City of San Antonio*, 995 F3d 395, 406 (5th Cir 2021); see also *Batyukova v Doege*, 994 F3d 717, 724–25 (5th Cir 2021). A court must first ask "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Aguirre*,

995 F3d at 406, quoting *Tolan v Cotton*, 572 US 650, 655–56 (2014). The court must view the facts in the plaintiff's favor, but it needn't accept the plaintiff's version of the facts wholesale—especially where bodycam video depicts the events at issue. That is, "where there is video capturing the events in question and 'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Valencia v Davis*, 836 F App'x 292, 296 (5th Cir 2020, *per curiam*), quoting *Scott v Harris*, 550 US 372, 380 (2007); *Garza v Briones*, 943 F3d 740, 744 (5th Cir 2019) (internal quotation omitted) (plaintiff's version of facts not to be accepted when "blatantly contradicted and utterly discredited by video recordings").

If the plaintiff establishes a violation of a federal right, a court must then determine whether the right was "'clearly established' at the time of the violation." *Tolan*, 572 US at 656, quoting *Hope v Pelzer*, 536 US 730, 739 (2002). The Supreme Court holds, "A clearly established right is one that is 'sufficiently clear that every reasonable officer would have understood that what he is doing violates that right.'" *Mullenix v Luna*, 557 US 7, 11 (2015), quoting *Reichle v Howards*, 566 US 658, 664 (2012). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope*, 536 US at 739 (internal quotations and citations omitted).

Critically, a "good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Valencia*, 836 F App'x at 297 (internal quotations omitted); see also *Batyukova*, 994 F3d at 724, quoting *Valderas v City of Lubbock*, 937 F3d 384, 388 (5th Cir 2019). To rebut the defense, the plaintiff must establish "that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Valencia*, 836 F App'x at 297, quoting *King v Handorf*, 821 F3d 650, 654 (5th Cir 2016).

7

      a. Officer Singer

Hunter asserts claims against Singer for excessive force, unlawful arrest, and retaliation under the First Amendment. Dkt 18 at ¶¶ 69–85, 87. None may proceed to trial.

      i. Excessive force

The elements of a claim for excessive force are, first, injury; second, the injury resulted directly and only from a use of force that was clearly excessive; and third, the excessiveness of the force was clearly unreasonable. *Taylor v Hartley*, 488 F Supp 3d 517, 532 (SD Tex 2020), quoting *Trammell v Fruge*, 868 F3d 332, 340 (5th Cir 2017), in turn quoting *Deville v Marcantel*, 567 F3d 156, 167 (5th Cir 2009).

The Fifth Circuit recently and at length addressed qualified immunity in the context of excessive-force claims:

> In excessive force cases, "[t]he second prong of the [qualified immunity] analysis 'is [itself] better understood as [encompassing] two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v City of Edna*, 410 F3d 745, 750 (5th Cir 2005), quoting *Felton v Polles*, 315 F3d 470, 477 (5th Cir 2002). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v Rickard*, 572 US 765, 778–79, (2014). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver*, 410 F3d at 750.

*Tucker v City of Shreveport*, 998 F3d 165, 172 (5th Cir 2021).

8

The Fifth Circuit also stresses that this inquiry is limited to what the pertinent officer knew at the time of the challenged action:

> When evaluating a qualified immunity defense, courts "consider[ ] only the facts that were knowable to the defendant officers." *White v Pauly*, 137 S Ct 548, 550 (2017, *per curiam*); see also *Cole*, 935 F3d at 456 ("[W]e consider only what the officers knew at the time of their challenged conduct."). "Facts [that] an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." *Hernandez v Mesa*, 137 S Ct 2003, 2007 (2017, *per curiam*); *Brown*, 623 F3d at 253 ("An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight.").

*Tucker*, 998 F3d at 173.

Whether force is reasonable depends on the so-called *Graham* factors, being first, the severity of the crime at issue; second, whether the suspect poses an immediate threat to the safety of the officers or others; and third, whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Hanks v Rogers*, 853 F3d 738, 745 (5th Cir 2017), quoting *Graham v Connor*, 490 US 386, 396 (1989).

The force Singer used was reasonable. The underlying crime wasn't severe, and it can be assumed that Hunter didn't necessarily pose an immediate threat. Still, the bodycam video plainly shows that he resisted arrest. And police officers may use force to effect an arrest where the suspect actively resists. For example, see *Hutcheson v Dallas County*, 994 F3d 477, 480–81 (5th Cir 2021); see also *Carroll v Ellington*, 800 F3d 154, 173–76 (5th Cir 2015). Beyond this, the amount of force used here to wrestle Hunter to the ground was far less than that used in other lawful instances. For example, see *Cardena v Ray*, 728 F App'x 293, 296–97 (5h Cir 2018, *per curiam*) (reasonable force found where police officers tackled and tased arrestee when he resisted

9

being arrested for public intoxication); *Hogan v Cunningham*, 722 F3d 725, 733–34 (5th Cir 2013) (reasonable force found where police officers tackled arrestee trying to close his front door on them).

Hunter fails for much the same reason to carry his burden to show that Singer's conduct violated a clearly established right. See *Valencia*, 836 F App'x at 299. It certainly can't be said on these facts that "every reasonable officer would have understood" that the pertinent actions were unlawful. *Mullenix*, 557 US at 11, quoting *Reichle*, 566 US at 664. This being so, "officers of reasonable competence" could disagree on whether the force used here was excessive. *Tucker*, 998 F3d at 172, quoting *Tarver*, 410 F3d at 750.

Summary judgment is appropriate on this claim.

### ii. Unlawful arrest

To assert a valid false-arrest claim under Section 1983, Hunter must show that Singer "did not have probable cause to arrest him." *Anokwuru v City of Houston*, 990 F3d 956, 963 (5th Cir 2021), quoting *Haggerty v Texas Southern University*, 391 F3d 653, 655 (5th Cir 2004) (citation omitted).

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty*, 391 F3d at 655–56 (quotation omitted). And of pertinence here, Singer is entitled to qualified immunity if "a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [the suspect] had committed or was committing an offense." Id at 656, citing *Glenn v City of Tyler*, 242 F3d 307, 313 (5th Cir 2001).

Whether there was probable cause requires identification and analysis of a particular crime. Singer arrested Hunter on allegation of both criminal trespass and resisting arrest. Dkt 57-1 at 7. A sufficient showing of probable cause as to either one necessarily undermines any assertion of unlawful arrest. And as to the former, the Texas Penal Code § 30.05 provides:

> Sec. 30.05. CRIMINAL TRESPASS.
>
> (a) A person commits an offense if the person enters or remains on or in property of another, including residential land, agricultural land, a recreational vehicle park, a building, or an aircraft or other vehicle, without effective consent and the person:
>
> (1) had notice that the entry was forbidden; or
>
> (2) received notice to depart but failed to do so.

*Notice* includes "oral or written communication *by the owner* or someone with apparent authority to act for the owner." Tex Penal Code § 30.05(b)(2)(A) (emphasis added).

Singer plainly had probable cause to arrest Hunter. Hunter's only argument is that he was never told to leave—that is, that he didn't have *notice*. But Vanunu and Benavides attest that Hunter was told to leave before Singer arrived. Dkt 53-1 at 23, 25. Hunter's only evidence to the contrary is his stricken affidavit. See Dkt 68-1 at 8. Regardless, the bodycam video clearly shows that Vanunu told Singer that he had previously asked Hunter to leave the premises. Bodycam, 0:05:10–0:05:13. This alone supports probable cause, while also mooting any argument that Hunter tries to make about the clarity of orders to depart made by Singer himself. As such, Hunter fails to show "that the official's allegedly wrongful conduct violated clearly established law." *Valencia*, 836 F App'x at 297, quoting *King*, 821 F3d at 654. Indeed, given that no evidence supports Hunter's claim that Singer committed a constitutional violation by arresting him without probable cause, the claim also fails on the merits.

Summary judgment is appropriate on this claim.

### iii. First Amendment retaliation

The elements of a claim for retaliation under the First Amendment are, first, the plaintiff was engaged in constitutionally protected activity; second, the officer's actions injured the plaintiff such that the injury would chill a person of ordinary firmness from continuing to engage in that activity; and third, the officer's allegedly unlawful actions were substantially motivated by their opposition to plaintiff's constitutionally

11

protected conduct. *Alexander v City of Round Rock*, 854 F3d 298, 308 (5th Cir 2017), citing *Keenan v Tejada*, 290 F3d 252, 258 (5th Cir 2002).

As to the first element, the bodycam video doesn't show that Hunter was engaged in any constitutionally protected activity that would preclude his arrest at that time on independent and adequate grounds. Hunter simply complains that Singer arrested him while he happened to be on the phone with the 911 dispatcher to request that a *different* officer come to the scene because he disfavored Singer. See Dkt 18 at ¶¶ 70–72, 87; Dkt 68 at 21–22. He fails to cite legal authority explaining why the First Amendment protects this activity in the manner he suggests. This being so, and even if sufficient causation were shown, Hunter in no way establishes that any violation was in contravention of clearly established law at the time it occurred.

Summary judgment is appropriate on this claim.

### b. Sergeant Reuther

Hunter brought a claim against Reuther for First Amendment retaliation. Dkt 18 at ¶ 87. But he expressly abandoned that claim in his response to the motion for summary judgment. Dkt 79 at 6.

He continues to assert his claim for failure to supervise. Dkt 18 at ¶¶ 96–100. The elements of such claim are, first, the defendant was required to supervise the offending subordinate and failed to do so; second, a causal link exists between the alleged failure to supervise and the alleged violation of the plaintiff's constitutional rights; and third, the failure to supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Hutcheson*, 994 F3d at 482, quoting *Pena v Rio Grande City*, 879 F3d 613, 623 (5th Cir 2018).

As has already been shown, there's no underlying constitutional violation. But a failure-to-supervise claim is derivative, meaning that it must be based on some predicate violation. See *Zimmerman v Cutler*, 657 F App'x 340, 348–49 (5th Cir 2016, *per curiam*), citing *Hill v Carroll County*, 587 F3d 230, 238 (5th Cir 2009) (declining to give claim further consideration where plaintiff had not created a genuine issue of material fact on the existence of a constitutional violation); see also *Baker v Putnal*,

75 F3d 190, 199 (5th Cir 1995). Reuther can't be liable on this claim where no constitutional violation resulted from his alleged failure to supervise.

Beyond this, and to a certainty, nothing suggests—and Hunter cites no decision—that a person having his car repossessed has a clearly established right to have a supervisor present on the scene. Reuther thus enjoys qualified immunity to the extent that Hunter continues to assert otherwise.

What's more, the facts (even in the light most favorable to Hunter) don't otherwise show that Reuther's conduct violated a federal right. There's simply no causal link between Reuther's actions and any action by Singer allegedly constituting a violation of his civil rights. Hunter specifies nothing in the conversations between Reuther and Singer that suggests a lack of supervision led to or allowed Singer to act as he did. Neither is there any evidence of deliberate indifference—indeed, quite to the contrary, the evidence shows that Reuther remained in contact with Singer and continued to follow up on the situation. And so, nothing suggests that Reuther "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that he actually drew the inference. *Estate of Davis v City of North Richmond Hills*, 406 F3d 375, 385 n 48, quoting *Smith v Brenoettsy*, 158 F3d 908, 912 (5th Cir 1998). The bodycam video instead shows that all information relayed by Singer to Reuther accurately described the circumstances without implying a potential for serious harm.

Summary judgment is appropriate on this claim.

### 5. Claims against the City of Houston

Hunter asserts several constitutional claims against the City of Houston, being failure to discipline, failure to train and supervise, ratification of Singer's conduct, and First Amendment retaliation. See Dkt 18 at ¶¶ 88–95; see also Dkt 77.

Hunter doesn't attempt to defend his claim under the First Amendment in his response to the City's motion for summary judgment. The claim is thus abandoned and will be dismissed.

As to the remaining claims, they (like the claim against Reuther) must all be based on some underlying constitutional

13

violation. *Zimmerman*, 657 F App'x at 348–49, citing *Hill*, 587 F3d at 238. As established above, no such violation exists. They must be dismissed on that basis.

Even so, they will be briefly addressed. And in that regard, municipal liability under Section 1983 doesn't extend merely on a *respondeat superior* basis. *Monell v Department of Social Services*, 436 US 658, 691 (1978). The plaintiff must show that an official policy promulgated by the municipal policymaker was the "moving force" behind the violation of a constitutional right. *Piotrowski v City of Houston*, 237 F3d 567, 578 (5th Cir 2001) (citations omitted). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Doe v Edgewood Independent School District*, 964 F3d 351, 364–65 (5th Cir 2020) (emphasis in original), quoting *Pembaur v Cincinnati*, 475 US 469, 479 (1986).

        a.    Failure to discipline

Failure to discipline isn't a common claim, with the Fifth Circuit appearing to have addressed it only eight times in the last twenty years. As most recently stated, the essential elements are, first, the municipality failed to discipline its employees; second, that failure to discipline amounted to deliberate indifference; and third, the failure to discipline directly caused the constitutional violations in question. See *Deville v Marcantel*, 567 F3d 156, 171 (5th Cir 2009), citing *Piotrowski v City of Houston*, 237 F3d 567, 580 (5th Cir 2001). Hunter meets none of these elements.

Hunter's exhibits were properly stricken because he failed to address objections raised against them. As such, nothing establishes that the City improperly failed to discipline Singer or Reuther. In any event, this necessarily follows from the prior conclusion that there's no evidence of an underlying constitutional violation that would require discipline.

There's also no evidence of deliberate indifference. To establish deliberate indifference, a plaintiff must produce "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v Thompson*, 563 US 51, 61 (2011), quoting *Board of County Commissioners of Bryan County*

*Oklahoma v Brown*, 520 US 397, 409–10 (1997). That "ordinarily" requires a plaintiff to allege a pattern of similar constitutional violations. *Connick*, 563 US at 62 (2011), citing *Board of County Commissioners*, 520 US at 409 (1997). No evidence exists in this record of other instances where officers weren't disciplined in response to clear constitutional violations, and nothing shows that "city policymakers are on actual or constructive notice" of such a deficiency. *Connick*, 563 US at 61, citing *Board of County Commissioners*, 520 US at 407. Nor is there any evidence either identifying a municipal policymaker or linking municipal action to that policymaker. See *Taylor*, 488 F Supp 3d at 537–38.

The foregoing also necessarily establishes that no failure to discipline caused a constitutional violation here.

Summary judgment is appropriate on this claim.

### b. Failure to train and supervise

The Supreme Court has explained, "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 US at 61 (2011) (citation omitted). But a decision by a local government not to train certain employees about their legal duty to avoid violating citizens' rights may in some circumstances rise to the level of an official government policy for purposes of Section 1983. Id at 61.

The elements of a failure-to-train claim are the same as those for failure to supervise, being first, the training procedures of the municipality's policymaker were inadequate; second, the policymaker was deliberately indifferent in adopting the training policy; and third, the inadequate training policy directly caused the plaintiff's injury. *Conner v Travis County*, 209 F3d 794, 796 (5th Cir 2000), quoting *Baker*, 75 F3d at 200; see also *Pena*, 879 F3d at 623, citing *Thompson*, 245 F3d at 459.

Hunter's exhibits were properly stricken for failure to respond to asserted objections. As such, nothing establishes the substance of the City's training protocols as they relate to these issues or how they're inadequate. There's also no evidence of any past constitutional violations or anything that would put a city policymaker on notice and show deliberate indifference. Nor is there evidence showing either who the putative city policymaker is or what he or she did. And for those reasons, there necessarily

is no evidence establishing that any deficient training by the City caused the underlying events to occur.

Summary judgment is appropriate on this claim.

### c. Ratification

The Supreme Court permits a ratification theory against a municipality to go forward in certain limited circumstances:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*City of St Louis v Praprotnik*, 485 US 112, 127 (1988) (emphasis in original).

On the pleadings in *Covington v City of Madisonville*, the Fifth Circuit found such theory sufficiently alleged to withstand motion to dismiss. 812 F Appx 219, 228–29 (5th Cir 2020, *per curiam*). It specified as follows:

> Ratification in this context requires that a policymaker knowingly approve a subordinate's actions and the improper basis for those actions. Otherwise, unless conduct is "manifestly indefensible," a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality.

Id at 228, citing *Praprotnik*, 485 US at 127, *Beattie v Madison County School District*, 254 F3d 595, 603 n 9 (5th Cir 2001).

Hunter's ratification claim fails under these standards. He again fails to identify a policymaker that ratified the conduct at issue. Having failed to do so, he certainly fails to prove specific facts that support an inference that the pertinent policymaker knew of unlawful actions and approved them. To the contrary, a policymaker must have actual knowledge of the improper basis

for the subordinate's action and yet approve the action anyway. See *Beattie*, 254 F3d at 604; see also *Taylor*, 488 F Supp 3d at 545. And none of the conduct here can be characterized as manifestly indefensible given the determination above that the conduct didn't violate a constitutional right that was clearly established at the time of the violation. That is, the actions are not "an obvious violation of clearly established law." *Young v Board of Supervisors of Humphreys County*, 927 F3d 898, 903 (5th Cir 2019).

Summary judgment is appropriate on this claim.

### 6. Claims against 3B

The docket doesn't reflect that Hunter ever served 3B. This was noted at hearing, and Hunter was told that he "must by 04/23/2021 direct the Court to prior proof already filed on the docket as to service on 3B Auto Sales or it will be dismissed." Minute Entry of 04/16/2021. Hunter filed nothing in response.

3B will be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

### 7. Conclusion

The motions for summary judgment filed by Defendants City of Houston, Matthew Singer, and G.E. Reuther as to the claims filed against them by Plaintiff Eric Hunter are GRANTED. Dkts 53, 55, 57. The claims against them are DISMISSED WITH PREJUDICE.

The claims asserted against Defendant 3B Auto Sales, LLC are DISMISSED WITHOUT PREJUDICE for failure of service.

The objections by Singer to exhibits are SUSTAINED, and the pertinent exhibits are STRICKEN. Dkt 73.

SO ORDERED.

Signed on September 29, 2021, at Houston, Texas.

*[signature: Chas R Eskridge II]*

Hon. Charles Eskridge
United States District Judge